Good morning, Your Honors. Clark Guerin, appearing for The Best Service Co. and I would like to reserve five minutes. Okay, Mr. Green. Go right ahead. I'll try and help you with the time. Thank you. Well, it was Guerin, not Green. Green's the school. I'm sorry. I got the wrong guy here. Oh, everybody mispronounces Guerin. Guerin. There we are. Now, even with my glasses, I can read it. Okay. Thank you, Your Honor. All right. We're here because this case puts creditors into a Catch-22. The bankrupt wants us to order, take custody or take control over property under levy that's not in our possession and instruct the levying officer what to do with property of the estate before the period for objecting to exemptions is over. And this is property of the estate. If we do that, we could be liable to the trustee. We could be liable to another creditor because we are possessing property of the estate over which we have no custody. Mr. Guerin, let me ask you a couple of questions. It's my understanding that when the defendant or when Bailey files her Chapter 13 bankruptcy, she sends notice to the sheriff and to your client. That's correct. And it's my understanding that at that point she exempted the $4,000 in her schedules under the wild-card exemption. That's correct. Did you ever object to that? No, and we had no objection to it. So you didn't care that it was under the wild-card exemption? No. Okay, so the next question is she files a motion to avoid the real property lien securing the judgment. Yes, Your Honor. And you did not oppose? No, we did not. So at that point your real property lien is gone. That's correct. The fact that she's now under the exemption is there. I'm sorry, Your Honor? It's now exempted because she didn't object to that. The real property? No, the $4,000 in her schedule. No, the $4,000 wasn't part of that lien avoidance motion. Well, just a minute, just a minute. There was, however, we started with she filed for an exemption of $4,000 in her schedules and you did not object. That's correct. So the $4,000 was exempted because you did not object. That is not correct, Your Honor. Okay, what did you do to keep it from being exempted? Well, we didn't do anything, but it was the passage of time. It didn't become exempt until the time in which any creditor had or the trustee had to move to object to the exemptions. But nobody did object, including you, right? No, nobody objected. And once the time for objecting to the exemption has expired, the exemption is final and valid, right? That is correct. Okay, and let me ask you another question. Is it also true that your client or you or somebody contacted the sheriff and asked the sheriff to stay any further execution of the judgment and to hold all levied funds pending further instructions from the trustee or you? That's not entirely correct, Your Honor. It said further instructions from us if the case were dismissed. Well, but just a minute. My understanding, and that's why I'm trying to understand the facts, that you contact the sheriff, you say, stay any further execution of the judgment, suggesting that it isn't totally executed at this time, and then to hold the funds pending further instruction. If that's what you did, then, and you didn't object to the exemption, and you didn't object to the motion to avoid the real property lien, I'm trying to understand why it is, then, you didn't violate the stay by not allowing the funds to be turned over. Well, first of all, we didn't stop the funds from being turned over. Well, just a minute. You just said you did. No. You just said you contacted the sheriff and asked the sheriff to stay any further execution and to hold all the funds pending your further objection. No. That's not what the instructions said. They say to hold pending further instructions from the court, the trustee, or from us, and there's a parenthesis, if the bankruptcy case is dismissed, that's the only time in which we would be able to give the sheriff further instructions if the case is dismissed. Because if the case is dismissed, then those funds again belong to us, and that happens not infrequently, Your Honor. Given 11 U.S.C. 1303 and 1306B, it seems to me that the Chapter 13 debtor is in possession and retains control of the operation of Chapter 13 estate. Would you agree? Yes. So at that point, the only way one gives money to the trustee is when the payments are to be made pursuant to the plan. Would you agree with that? Yes. Well, then there is no money to be given to any trustee because that would be pursuant to a plan, and this is money that has not been executed. It should be turned over because, in fact, the debtor is indebted or in possession and retains control. But it should be turned over under the auspices of an order from either the court or the trustee. We don't have the jurisdiction as a creditor on the demand of the debtor's attorney to just turn the money over because there's nothing in the code. You don't have the money.  The sheriff has the money. That's correct. And at that point, you shouldn't be involved in telling the sheriff what to do at all. The sheriff should do whatever the sheriff wants to do. And when you get involved and say, Mr. Sheriff, don't be turning that money over unless, then at that point you're trying to take control. That's what we're after here. Are you taking exercising control over property of the estate? No. And it seems as if, given the facts you've agreed to, you did. No, Your Honor. And one thing I'll point out is even if we had instructed the sheriff to turn over the money, they still wouldn't have done it. They need an order from the court to do a turnover, not from the debtor or from the trustee. But doesn't this case basically turn on Bess' contact with the sheriff? Had Bess done nothing but simply stood mute when it received the automatic stay order, would it have been in violation of the statute? Yes, I think we would have because we had no way of knowing that the debtor had instructed the sheriff to stop levies. Sometimes they do, sometimes we don't. When we had notice, we were under the automatic stay obligated to tell the levying officer ourselves, hey, they filed bankruptcy. Stop further levies. But what if they'd stopped right there? What if they'd done prong one, simply contacted the sheriff and instructed the sheriff to cease all further collection actions without saying, and hold on to the money until you either receive an order, a request, or the bankruptcy is dismissed? In hindsight, that's what the attorney should have done. That's what I wished he would have done. That's what I'd have done if I'd have been the one sending the letter. But you take your cases as you find them. That is the inconvenient fact that you have to deal with. That is one of my inconvenient facts. However, when you look at the totality of that communication, I think it's clear that we are not telling them to violate the law. We're not telling them to do anything. You can take things out of context. But the overriding message of that letter is stop the levies, hold the money until further instructions by the trustee or the court, which is in accordance with the code. Wasn't that exercising control when you directed the sheriff to hold the fund? I don't think so, Your Honor. I think that that's the primary purpose of the notice is to tell them to stop taking money. I don't really think that's exercising control. It's telling them what the statute is. It's telling them that, gee, you should do this pending further orders from the court or from the trustee. It seems to me that what you're really saying, and I'm looking at 362A2 and A3, we've talked about exercise control over the property of the state. Now I'm going back to A2, which is the enforcement of a judgment obtained before the commencement of the case under this title. It seems to me that enforcement of a judgment, no question this judgment was obtained before the commencement of the case. Yes. No question you didn't even object to the fact that then the judgment went away. No question that you told the sheriff not to send out the funds but instead hold them. Why isn't that an act of enforcement? Because it's an act of holding the property of the estate. It's an act of saying this belongs to the estate. Don't do anything more until it's done. But just a minute, why couldn't you have said nothing? Why did you have to try to enforce the judgment that you've obtained, getting that far along with the $4,000? Weren't you just telling the sheriff to comply with a pre-petition judgment or a pre-petition execution or a pre-petition levy, which is contrary to 362A2? No, I don't think that's what we were doing. But as I said earlier, my associate put that in there. I wish it hadn't been in there. It's a problem with the case. Well, let me ask you, have you read Morgan Guarantee Trust? Yes. What do I do with Morgan Guarantee Trust when I'm looking at your case? In Morgan Guarantee Trust, they said, construe the provisions of the automatic stay broadly. The creditors have a duty to seek relief from stay and turn over the property to the estate upon the filing of the bankruptcy. So it seems to me that had you said, turn this property over, Mr. Sheriff, and filed relief from stay, Morgan would have been your best friend. But you didn't. So Morgan seems to go against you, which I'm bound by. Well, Your Honor, what I would suggest to you is that with Morgan, that creditor actually had the money. I know. He was in a better position than are you. You didn't even have the money yet. The judgment wasn't even done. The levy wasn't even finished. And you still tried to do the same thing as the creditor in that case. I don't think it's the same. Oh, no, it isn't the same. You're in worse position. I disagree with that, Your Honor. The big distinction is that creditor was in control of the money. So are you. If the sheriff sends you out a letter and you then try to take control, which is exactly what you did. Well, I don't think we did try and take control. But the point is we wouldn't have had control because if we'd have told the creditor, here's my question in response to you, Your Honor, if we'd have written to the sheriff and said, hey, ignore the bankruptcy, send us the money, you think they would have done it? We didn't have control.  And I'd like to see maybe the sheriff was, what are you going to do with In re Kraus? In re Kraus, the sheriff seized the property and while holding the property, the bankruptcy was filed. The creditor refused to allow the return. The district court said violation. Well, I believe that's the one where they also went. That's the lumber case where they tried to have the debtor excommunicated. Yep. All of these cases, Your Honor, are ones where the creditor actually does something to try and impede the bankruptcy. So all you're saying is on appeal, you should look at what the district court found doing what they had to do, making a discretionary decision, and determine that the district court was wrong. Yes. Because we're in a different spot. Yes. So do I owe any deference to the district court? That district court. Do I owe any deference to that district court decision? No, I believe this is. Well, now, just a minute. We're talking about facts here and the appropriate way to review the facts. And you're saying I don't owe any deference? I'm saying that you hear this case anew. What case do you have for that? Well, it's an issue of law. It's de novo as to law, but he's asking you about what we do with the factual determinations, and isn't that a clearly erroneous standard of review? No. I don't think so when it's an issue of law that's being reviewed. Okay. You're down to 35 seconds, or I'll give you a little extra time on rebuttal. Okay. Thank you. You're welcome. Good morning, Your Honor. Good morning. And may it please the Court, I'm John Hayes. I'm with my partner, Matt Resnick, Simon Resnick and Hayes. Your Honor, I thought it might help. I've been listening, obviously, and it seems to be going our way. Well, it's supposed to stop. I'm not sure it's going your way. I was posing the toughest questions I could to your competitors, so maybe you better speak up. Right. Well, so I thought what I could say is, I mean, to help the Court a little bit understand what happened here and what does happen and the effect of the Court's ruling. And that is it's not unusual. This happens all the time, frankly. The debtor comes to us after the horse has left the barn. They got my car. They hit my bank account. There's a wage garnishment. Can you get this property back? Our answer is, of course we can get it back. They think that means, well, we'll file a few papers and the sheriff will release the money that afternoon. No, no, no. We're going to have to do some arm wrestling with the sheriff. It depends on how much the creditor cooperates. That's going to have to do with how long it takes to get the money back. But what we don't do is file a motion for turnover. And, frankly, if the Court were to say that what the creditor did in this case is okay, we will. We will have no choice. After this, every time a client comes in and a creditor or somebody else has their property, we will have to file a motion. We'll submit a fee application for that. That will go into the plan and the trustee will start paying us our fees for filing this motion. The reason we don't do it, though, is it gets worked out. I can't think of a, I mean, really other than this. In fact, yesterday I actually went, you know, this 522F motion wasn't on personal property. I wasn't sure whether there was a form. We have a lot of forms in the Central District. And I went and there is a separate form. And I wasn't sure of that because we don't do it. We work it out. We don't. But the problem we had here was we had a sheriff whose antenna went up immediately. Whoa, you know, who needs to be sued? Let's see what the cooperation is going to be. Well, they took the safe bureaucratic position. We're not going to do anything until a judge tells us to do something or the creditor withdraws its request that we commence execution proceeding. Yes. Right? Yes. So we have the bureaucracy that says the safest thing to do is just freeze everything. Right. So do you agree that when best, had best stopped at that point and simply told the sheriff, the automatic stay is in effect, stop execution proceedings on our judgment, they would have been acting within the law and not in violation of the automatic stay, but that when they then told the sheriff and hang on to the money pending either a court order, a request from the trustee, or the cessation of the bankruptcy, in which case then the money comes to the creditor, that that was the, as I characterized it, the inconvenient fact that renders best liable for the violation? I don't think there's any doubt about it. I agree that, I mean, if two months into the case we still didn't get the money back and they hadn't written that letter, and I'm not so sure we would have been quite so vociferous about your violating the automatic stay. We still would have tried to work something out with them, tell the sheriff we need this money. You know, the money is exempt. The trustee, this, by the way, I don't want to forget, but the letter didn't say until we get something from the court. No. It said until you get something from the bankruptcy trustee or us. I misunderstood. And then he put parentheses meaning dismissal or discharge. Right, yeah. They don't get the money if it's discharged. They get the money only if it's dismissed. And, by the way, that's one reason why these things take a couple of, it's not unusual that it's a couple of months, because Chapter 13s can go away fairly easily. You dismiss it. So once the plan, I mean, as the case percolates, we file the rest of the schedules, we claim the exemptions, we file a plan, the debtor starts making payments, we have the mating of creditors, and in this case, by the way, a plan was confirmed. They are making the payments to today. But, you know, a couple of months into the case, you can see it's a real case. Who needs to fight about these things? The creditors get more reasonable and it gets worked out. So you've kind of anticipated my question. What is it BESS could have done and not violated the stay? Well, had they not written that first letter, what they should have done, and I have, I'm completely okay with the fact that they should have cooperated. They should have written a letter and an email or called, and all they really needed to say to the sheriff is, we're not going to sue you. They could have said, we have no power, we can't tell you what to do, the code says what it says, but we won't go after you. I mean, the sheriff's saying, boy, you know, tell us if we're missing something. Is there some reason why we shouldn't just say, we're not going to go after you. That's what they should have done, and that's what virtually ought, we get the cars back when they repossess the car. They say, are you sure you're not going to take this to. Is that what happened is in the April 22nd, 2014 meeting when the parties met, did you describe this to the Bess? No, I personally was not involved in the case up until then. Did the parties describe this, what you're telling me? Because it seemed to me there was a time when the parties were meeting, and at that point, Bess would not do anything. The only thing they would say is, trustee can decide, but we're not doing any more. Yes, and in fact, we can't because we'll be violating the stay. No. Were you involved in sending a letter telling them that the sanctions and contempt would be sought if the funds were not turned over? I was not, but I have read the letter. Was your firm? Oh, yes. It was one of our associates, and we said here, can you contact this lawyer? We don't want to be filing motions, submitting fee applications. See if you can contact this attorney and see if you can get the money released. I'm not in favor of bombastic letters giving the other side what for, but it was an attempt to get a resolution without going to court. Well, and the problem is you've got such a small amount of money, you're going to burn it up in legal fees before you ever see the $4,000. Well, yes, and frankly, we'd have to do it. I wouldn't be surprised if this doesn't come up once a week. We'd be filing a motion on every single case we have after this, and the judges would be saying, what are you doing this for? Can't you just work this out? Can't you just call the creditor? And if the answer to that is, well, we called and there was no response, I'm not sure the judge would be terribly happy with this. You know, they wrote to the sheriff, and the sheriff is saying, you know, who needs this? Who needs, you know, we've got this guy telling us to hold on to the money. Go tell it to the court. We're not going to get involved. That's what happened. You know, and I wanted to say in the central district of California, in the San Fernando Valley, there's only one trustee, Liz Rojas, and her area goes up past Santa Barbara, and she gets a few thousand cases a year in a small year. This is not the biggest case on her docket, on her calendar. And it's, you know, I've met with her. She has a stack, and, yes, you know, hey, Liz, can you know, what are you asking me for? It's obvious. And that's what I thought about, is it's also obvious. So we tell the client, we will get that money back. There is no conceivable argument that it, you know, by the way, it is different in Chapter 7. Most of these cases are Chapter 7 cases, but there the money belongs to the trustee. You know, I tell, you know, your cameras, your golf club belong to the trustee. You have no standing to start going after people and ask that they be turned over to you. But in Chapter 13, the trustee, you know, processes the payments. Is it true the lawyers fee have exceeded that amount as of this time? Oh, by many, many, many times. We actually only asked for $2,500 in the original motion, and the judge ultimately awarded $4,500. And now it's so long beyond that. And honestly, if it's the Ninth Circuit, you know, boy, if the Ninth Circuit says, yeah, what they did is okay, that's, I mean, every debtor attorney in the Central District in the Ninth Circuit, I assume, is, boy, we're going to have, because the creditor then will say, hey, read this case. We don't have, I don't have to do anything, you know. And we'll assume we're not going to get any cooperation, and we'll start, you know, churning out motions and paperwork because we're going to be assuming that the creditor won't do anything. Is this why there are so many forms in the court? You know, I'm not sure why there are. We have, I think we're the world's chance. That's probably not a relevant question, but I could ask any question you want. I am curious, next time I meet one of the bankruptcy judges, I'm going to say, when's the last time you saw a 522-F motion on personal property? I didn't even remember that there was a form. These things get worked out. And that letter is saying, look, buddy, Mr. Sheriff, you know, you be careful about this one. That ended it at that point. And I completely agree, and it's obvious, I think, that Judge Coffman listened to all of this, the district court listened, and it has to be clear error before. I don't have much. I have a whole speech I prepared, but I'm not sure I need to say it. Don't snatch defeat from the jaws of victory, counsel. That's right before Rule 1. Yeah, that's it. That's Rule .5. Right. Okay. Thank you. All right. And thank you for your demeanor in telling us about this process. Great. Thank you very much. That's helpful. Mr. Geary, you've got an uphill fight here, I think, with this panel. Well, Your Honor, we came here to get binding precedent in a safe harbor. And that was very clear. As you know from the briefs, we posted a $100,000 bond to avoid this case being mooted. So if you're going to issue an order, issue a published opinion to create a safe harbor, if you're going to create a procedure whereby creditors do not or, excuse me, debtors do not have to do turnover orders and they're exempted for it, put it on a published opinion so creditors who follow it don't have to worry about being sued. Well, let me ask you a little bit about the practicalities here. The cases address the concern that because the debtor is in dire financial straits, courts generally try not to put additional work on the shoulders of the debtor because it just, as Mr. Hayes just mentioned, it just runs up the legal fees that are ultimately going to reduce what is left to pay the creditors. So the policy of the law seems to be against the position that you seem to be taking, that it's up to the debtor to go to the court and seek additional relief. Well, no. But help me write the disposition from the creditor's standpoint. What should the rule be that's clear to creditors? Well, you came with a hypothetical. If our letter had stopped at the first sentence, we would not have been in violation of an automatic stay. Right. So if you basically give us that safe harbor and then you all agreed that if that's all we said, we wouldn't have been in violation of the automatic stay and they would have had to have filed for a turnover. If you put that in the opinion, that's fine. I'm not sensing from your argument that that's the result that you want to achieve or certainly the result they want to achieve. We're trying to do justice here and we're trying to write a decision that will be clear to the bar and to the bankruptcy judges that are going to have to follow the precedent. We don't want to muck things up here. Go ahead. My suggestion as a creditor would be their big mistake was filing all this before the exemption period, the period to object to exemptions had expired. See, if they had waited until the period for exemptions to object to them had expired and they then sent that letter. And how long a period is that normally? I believe it's 30 days after the first meeting of creditors, but I'll defer to, they're the experts in bankruptcy. Isn't it 30 days after the first meeting of creditors? So we're talking about if we adopt your position or suggestion, it ought to be resolved within what, maybe 45 days of the filing of the petition? Well, I'm going to have to defer to them. How long after the petition is the first meeting of creditors usually? About 30 to 45 days. I was going to say 30 to 45 days. Yeah. I'm sorry, Your Honors, I'm not a bankruptcy expert. No, no, no, the thing is, the thing that worries me a little bit about what you're arguing is, and that's why I posed the questions to you, I was insurance defense counsel. I never knew what bankruptcy was all about. And frankly, it seemed like all the bankruptcy attorneys were a bunch of cliques. They all go down to the bankruptcy court and they all know what they're doing. And the judge, they all get together and play golf together and they all know what they're doing. And they hate creditors. And they all know. They don't necessarily hate all creditors because they got the trustee's lawyers there and he's maybe the biggest creditor and they're under two other creditors. But the bottom line is I've never seen a situation like this where I, even an insurance defense lawyer, took the unreasonable position, don't turn over the funds, when it hadn't been totally levied. It seemed to me that even a guy outside the clique would have understood. If you don't have it in your, I mean, I was even better on people having it in their best pockets. Then they might have a little more opportunity. But at this point there was nothing left to do and the normal course is to work it out so that the attorney's fees don't go up and all creditors get more. And that's something that it didn't seem like you were, or the lawyer involved at the time, was very cognizant of and there's no law to suggest that what you did was good. Well, our problem with it was, as I said at the beginning, if we do the turnover order without any authority for doing it, just working it out as he says, then we can be liable to the trustee. We can be liable for the claim of another creditor. And this is setting precedent. If you start with these numbers on it. Money you don't have. Money that's not yours. I don't know how you make that argument. This money was never yours. Never in your client's possession. Never subject to anything. Never levied. Never nothing. Just money that would have been in the bank. And how did you have any authority to do anything except say, We don't want any part of this. Go do what you've got to do. That's in essence what I think we said, Your Honor. I don't think you said that. I read your letter. Okay. Well, that's what it was supposed to say. And I would like, you know, so that we can get some binding precedent, I would like the opinion to address the issue of what happens when the letter does say that. Stop the levies and doesn't say anything else. Because you're creating a safe harbor to do that. Well, guess what? It's a little bit difficult to make big law from this circuit. I mean, I was in your shoes, and I didn't want them to make big law. I wanted them to address the issue in front of them and say that was right or wrong. The issue in front of us is, Did that letter of yours do more than it should have done? If we say it didn't, that it did more than it should have done, then you lose. That will be enough precedent to me in your situation. I don't want any glowing generality out of this court trying to decide what to do. Because I was under the other side of this, and I didn't like their glowing generalities. If they'd addressed the question, they ought to, but that's it. All right, counsel. I think we understand the respective positions, but thank you both for your argument. It was very helpful. The case just argued is submitted.
judges: D.W. Nelson, Tallman, N.R. Smith